## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

ROBERT GUTIERREZ,

      Plaintiff,

v.                                      1:20-cv-00174-DHU-SCY

DSG NEW MEXICO, LLC
dba ASHLEY HOME FURNITURE,

      Defendant.

### <u>MEMORANDUM OPINION AND ORDER</u>

      This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 18). Defendant submitted a Memorandum in Support of Defendant's Motion for Summary Judgment (Doc. 19), Plaintiff filed his Response to Defendant's Motion for Summary Judgment (Doc. 21), and Defendant filed its Reply in Support of its Motion for Summary Judgment (Doc. 22).  After considering the briefs, evidence, and being otherwise fully informed, the Court concludes that Defendant's motion will be **DENIED IN PART and GRANTED IN PART**.

### FACTUAL BACKGROUND

      The following facts are either undisputed or construed in the light most favorable to the summary judgment nonmovant for the purpose of determining the pending motion for summary judgment.  These facts are not to be construed as findings of fact by the Court for the purpose of determining the merits of Plaintiff's claims or Defendant's defenses.

      Plaintiff has a combined 30 years of experience doing furniture repair work.  Robert Gutierrez Deposition ("Gutierrez Depo.) at 8:20-25, Plaintiff's Exhibit ("Pl.'s Ex.") A, Doc. 21-1 at 3.  Plaintiff worked at American Furniture for 17 years and at Ashley Home Furniture for 13

years.  *Id.*  In 2007, Plaintiff began working at Ashely Home Furniture in the position of "Shop

Technician."  Defendant's Statement of Facts ("Def.'s SOF") ¶ 2, Doc. 19-1 at 31-32.  Plaintiff

worked at Ashely Home Furniture until he was terminated on February 21, 2019.  Defendant's

Exhibit ("Def.'s Ex.") 13, Doc. 19-2 at 14.

Defendant DSG New Mexico, LLC d/b/a Ashley Home Furniture owns and operates the

Ashley Home Furniture store, Distribution Center and clearance center in Albuquerque, New

Mexico.  Def.'s SOF ¶ 1.  The clearance center sold damaged furniture that was not repaired to

showroom quality.  Def.'s SOF ¶ 3.  In 2007, Bill Johnson owned the Distribution Center.  Mitch

Bolander Deposition ("Bolander Depo.") at 7:25-8:2, Pl.'s Ex. B, Doc. 21-1 at 19.  Sometime in

the last couple of months of 2018, Mr. Johnson sold the Distribution Center to Defendant DSG,

LLC d/b/a Ashely Home Furniture.  Bolander Depo. at 31:4-8.

Mitch Bolander began working at the Distribution Center in 2007.  Def.'s SOF ¶ 4.  In

2018 and 2019, Mr. Bolander was the Senior Distribution Manager at Defendant's Distribution

Center.  *Id.*  Mr. Bolander supervised Distribution Center Manager Daniel Lucero, who supervised

Distribution Center Supervisor John Porter, who supervised Plaintiff.  *Id.*

As a Shop Technician, Plaintiff's duties included repairing furniture to showroom quality

and making sure customers were satisfied with it.  Def.'s SOF ¶ 8.  This included repairing crushed

corners on dressers, chests, nightstands, and headboards.  *Id.*  Plaintiff's job as a Shop Technician

required long hours of standing, bending, twisting, and constant physical movement, and the ability

to lift up to 50 lbs.  Gutierrez Depo. at 20:10-18.

Between 2007 and 2017, Plaintiff was a good worker.  Def.'s SOF ¶ 12.  Plaintiff showed

up on time and knew how to do his job.  *Id.*  Throughout Plaintiff's time working as a Shop

Technician for Defendant, he repaired at least 10 pieces of furniture on a typical day.  Def.'s SOF

¶ 11; Gutierrez Depo. 40:10-16.  On some days he would repair from 12 to 15 pieces.  *Id.*  From August 2018 until his termination in 2019, Plaintiff continued to repair about the same number of pieces each day.  Gutierrez Depo. at 40:10-16.

Plaintiff was first diagnosed with arthritis in 1986.  Def.'s SOF ¶ 13.  While working for Defendant, Plaintiff first started noticing issues with his neck in April 2017.  Gutierrez Depo. 21:15-17.  It became hard to turn his neck.  *Id.* 23:4-7.  It also became hard to grab things because the nerves in his fingers were affected.  *Id*. 23:4-17.

 In April 2018, Plaintiff requested that Defendant provide accommodation of assistance with lifting heavy objects.  Bolander Depo. at 15:3-17:3. Defendant agreed to provide this accommodation, which involved having other employees help lift some products for Plaintiff.  *Id.* at 16:15-17:15.

In June 2018, Plaintiff went on Family Medical Leave Act ("FMLA") leave to undergo a neck fusion surgery.  *Id*. at 20:7-16. 24:13-19.  Upon returning from FMLA leave in August 2018, Plaintiff had some work restrictions, such as limited use of his hands and taking breaks as needed for pain relief.  *Id*. at 21:18-22:16.  Defendant accommodated these restrictions.  *Id*. at 20:13-22:24.  After the surgery, Plaintiff's performance improved, and Mr. Bolander was satisfied with Plaintiff's work.  *Id*. at 23:10-20.  During this period Plaintiff never received verbal or written warnings concerning the quality of his work.  *Id*. 23:16-25:3.  During this period Mr. Bolander did not inform Plaintiff he was at risk of losing his job.  *Id*. 25:1-3.

In January 2019, Defendant requested that Plaintiff's neurologist, Dr. Bryniarski, fill out a Reasonable Accommodation Request Form.  Declaration of Haley Emerson ("Emerson Decl.") ¶ 9, Def.'s Ex. 3; Reasonable Accommodation Form, January 24, 2019, Def.'s Ex. 9, Doc. 19-2 at 2.  In response to the question "[i]s the employee able to perform the essential job functions of this

position with or without reasonable accommodation as outline in the position description?" Dr. Bryniarksi marked "yes."  Def.'s Ex. 9, Doc. 19-2 at 2.  Dr. Bryniarski noted Plaintiff needed an accommodation for heavy lifting, but also that Plaintiff did not have any functional limitations, such as in ability to bend or grip.  Def.'s Ex. 9, Doc. 19-2 at 3.  However, Defendant contended that the form was not completed correctly, so required that the doctor to complete the form again. Emerson Decl. at ¶ 10.

On February 7, 2019, Dr. Bryniarski completed a second Reasonable Accommodation Request Form.  Def.'s Ex. 11, Doc. 19-2 at 8.  On this second form, Dr. Bryniarski noted that Plaintiff could not perform the essential job functions of his position with or without reasonable accommodation.  *Id.*  The doctor wrote that Plaintiff would be unable to perform his job duties for "10-20 weeks." *Id.*  In answer to the question"[i]f unable to determine [how long employee will be unable to perform], when will he/she be medically reevaluated?" Dr. Bryniarski wrote "June, 2019." *Id.*  Then, in another section of the form, Dr. Bryniarski noted that Plaintiff could perform the essential job functions of his position with the reasonable accommodation of "no heavy lifting [over] 25 pounds." *Id.*

On February 21, 2019, Defendant terminated Plaintiff.  Bolander Depo. at 27:12-18; Letter of Termination, Def.'s Ex. 13, Doc. 19-2 at 14.  After Plaintiff's termination, Plaintiff applied for numerous employment positions and continues to apply for employment positions. Gutierrez Depo. 64:9-11, 65:22-67:8.

## PROCEDURAL BACKGROUND

On January 17, 2020, Plaintiff filed a Notice of Appeal from his Order of Non-Determination from the Department of Workforce Solutions in the Second Judicial District Court of the County of Bernalillo, State of New Mexico.  Doc. 1-2 at 5.  Plaintiff brought claims for (1)

disability discrimination in violation of the New Mexico Human Rights Act ("NMHRA"), (2)
retaliation for requesting a reasonable accommodation in violation of the NMHRA, and (3) age
discrimination in violation of the NMRA.  *Id*. at 6.  On February 28, 2020 Defendant filed its
Notice of Removal in this Court on the basis of diversity jurisdiction.  Doc. 1.  On March 2, 2021,
Defendant moved for summary judgment on all of Plaintiff's claims.  Defendant's motion is fully
briefed.

## SUMMARY JUDGMENT STANDARD

"[I]n a federal diversity action, the district court applies state substantive law—those rights
and remedies that bear upon the outcome of the suit—and federal procedural law—the processes
or modes for enforcing those substantive rights and remedies."  *Los Lobos Renewable Power, LLC
v. Americulture, Inc.*, 885 F.3d 659, 668 (10th Cir. 2018).  In considering a motion for summary
judgment under these circumstances, the Court looks to state law to "determine what elements the
plaintiff[] must prove at trial to prevail on [his] claims" but "exclusively to federal law to determine
whether plaintiff[] ha[s] provided enough evidence on each of those elements to withstand
summary judgment."  *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1129 (10th Cir. 2009) (internal
citations omitted).

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as
to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(a).  "A fact is material if it can have an impact on the outcome of the lawsuit and genuine if a
rational jury could find in favor of the non-moving party based on the evidence presented."  *New
Mexico Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, 994 F.3d
1166, 1171 (10th Cir. 2021) (citation and quotation marks omitted).

In applying the summary judgment standard, a district court examines the factual record and
draws reasonable inferences in the light most favorable to the party opposing summary judgment.

*Applied Genetics Intl, Inc. v. First Affiliated Securities, Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1143-44 (10th Cir. 2013); *see also Jensen v. Kimble*, 1 F.3d 1073, 1077 (10th Cir. 1993) ("[o]nce the moving party has met its burden, the burden shifts back to the nonmoving party to show that there is a genuine issue of material fact.") (citing *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

The district court's role in analyzing a motion for summary judgment is to "assess whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133, 1150 (10th Cir. 2005) (citation and quotation marks omitted). "A plaintiff 'cannot avoid summary judgment merely by presenting a scintilla of evidence to support her claim; she must proffer facts such that a reasonable jury could find in her favor.' " *Milne*, 575 F.3d at 1130 (quoting *Turner v. Pub. Serv. Co. of Colorado*, 563 F.3d 1136, 1142 (10th Cir. 2009) (further citation omitted)). "T]he nonmovant is given wide berth to prove a factual controversy exists." *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1182 (10th Cir. 2003) (citation and internal quotation marks omitted). In deciding a motion for summary judgment, the court does not make credibility determinations but leaves that function for the jury at trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## LEGAL ANALYSIS

### A.  Age Discrimination

Plaintiff concedes Defendant is entitled to summary judgment on the age discrimination claim only.   Doc. 21 at 20.   Therefore, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's age discrimination claim.

### B.  Disability Discrimination

The first issue before the Court is whether summary judgment should be granted in favor of Defendant on Plaintiff's claims for disability discrimination under the NMHRA.   Plaintiff alleges Defendant violated the NMHRA by 1) "terminating Plaintiff because of his disability and 2) "not providing Plaintiff with accommodation." Doc. 1-2 at 6.  The Court addresses each of these two disability discrimination claims in turn.

The NMHRA states it is an unlawful discriminatory practice for "any employer to refuse or fail to accommodate a person's physical or mental handicap or serious medical condition, unless such accommodation is unreasonable or an undue hardship."  NMSA 1978, § 28-1-7(J).  When interpreting the NMHRA, New Mexico courts look to the federal Americans with Disabilities Act.[1] *See Trujillo v. N. Rio Arriba Elec. Co-op., Inc.*, 2002-NMSC-004, ¶ 8, 131 N.M. 607, 612, 41 P.3d 333, 338 (N.M. 2002).   The New Mexico Supreme Court applies the requirements for a prima facie case for discrimination under the ADAAA when analyzing a NMHRA claim of discrimination based on disability.   *Id.*  As a result, the Court analyzes Plaintiff's NMHRA claims under the framework of an ADAAA discrimination claim.

---

[1] The Americans with Disabilities Act was amended by the ADA Amendments Act of 2008 ("ADAAA").  The ADAAA's amendments took effect on January 1, 2009.  *Dewitt v. Sw. Bell Tel. Co*, 845 F.3d 1299, 1303 n.1 (10th Cir. 2017).  Because the events that form the basis of Plaintiff's claims in this case occurred after this date, the ADAAA is applicable.  It is important to note that the ADAAA primarily affected "revisions to the ADA's definition of 'disability.'" *Id.*   Because the revisions are not material to the issues presented here, the Court refers to the ADAAA and "freely rel[ies] on authorities prior to the ADAAA's effective date that apply and construe the ADA." *Id.*

### 1. Discrimination Claim Based on Termination

The ADAAA prohibits employers from discriminating against "a qualified individual on the basis of disability in regard to…discharge of employees." 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADAAA, Plaintiff must show he "(1) is a disabled person as defined by the [ADAAA];[2] (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer…because of that disability." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1308 (10th Cir. 2017) (citations omitted). At the summary judgment phase, it is "incumbent upon [Plaintiff] to … rais[e] a genuine issue of material fact on each element of his prima facie case." *Hawkins v. Schwan's Home Service, Inc.*, 778 F.3d 877 (10th Cir. 2015) (citing *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1189 (10th Cir. 2003) (second alteration in original).

### i. Legal Standard

When a plaintiff contends that a defendant intentionally discriminated against him because he was disabled, the lawsuit presents a claim of disparate-treatment discrimination. *Davidson*, 337 F.3d at 1188-89   The Tenth Circuit has described the prima facie case on this type of claim as "not onerous." *Hawkins*, 778 F.3d at 883 (citing *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005). Courts generally review disparate-treatment claims under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Davidson*, 337 F.3d at 1189. Under this framework, if a plaintiff establishes a prima facie case, the burden then "shifts to the defendant to offer a legitimate nondiscriminatory reason for its employment decision. If defendant articulates a nondiscriminatory reason, the burden shifts

---

[2] Under the ADAAA, a disability is "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

back to plaintiff to show a genuine issue of material fact as to whether the defendant's reason for the adverse employment action is pretextual." *Dewitt*, 845 F.3d at 1308 (citing *Davidson*, 337 F.3d at 1189).

However, the "burden-shifting framework may be 'unnecessary and inappropriate' where … there is direct evidence of discrimination." *Hawkins*, 778 F.3d at 883 (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 n.3 (10th Cir. 1997). "Direct evidence is evidence from which the trier of fact may conclude, without inference, that the employment action was undertaken because of the employee's protected status [i.e., disability]." *Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1105 (10th Cir.2008). In these circumstances, an "employer 'will defend its decision on the ground that the plaintiff is not otherwise qualified for the position, with or without reasonable accommodation,' within the meaning of the ADAAA." *Hawkins*, 778 F.3d at 883 (quoting *Davidson*, 337 F.3d at 1189). When that occurs, "the plaintiff's status as a *qualified* individual with a disability becomes the 'determinative issue in the case.'" *Id*. (emphasis in original).

In this case, the *McDonnell Douglas* burden-shifting framework does not apply because there is direct evidence of discrimination. Defendant has admitted that "Ashley terminated Gutierrez's employment *because, due to his chronic arthritis*, he could not longer satisfactorily repair damaged furniture to showroom-quality condition and was unable to timely perform furniture repairs." Doc. 22 at 1 (emphasis added). Haley Emerson, Director of Human Resources for Defendant, provided a Declaration that indicates one of the reasons she chose to terminate Plaintiff was because of information contained in the report from Plaintiff's doctor. Doc. 19-1 at 80; *see Hawkins* 778 F.3d at 883, 896 n.4 (affirming district court's finding that direct evidence of discrimination existed because, in part, the defendant admitted that the plaintiff's "heart condition…played a prominent part in its decision to place him on unpaid leave" and plaintiff's

"medical conditions prevented[ed] him from obtaining a DOT medical certification, which led to the adverse employment action"  (alteration in original and quotation marks omitted); *see also Osborne v. Baxter Healthcare Corp.*, 798 F.3d 1260 (10th Cir.2015 (finding burden-shifting framework did not apply).    Thus, the Court finds there is direct evidence of discrimination in this case.

Additionally, the parties here do not dispute that Plaintiff is a disabled person as defined by the ADAAA.  *See* Doc. 19 at 14 ("Ashley does not dispute that Gutierrez had a physical impairment that substantially limited one or more of his major life activities").  Because the parties appear to agree that Plaintiff satisfies the first element of the prima facie test and because the Court has found there is sufficient evidence that Defendant discriminated against Plaintiff because of his disability, the Court turns now to the "determinative issue" of whether Plaintiff has shown he is a qualified individual within the meaning of the ADAAA.

### ii.  Qualified Individual Analysis

The parties disagree as to whether Plaintiff has satisfied the second element of his prima facie discrimination claim, that is, whether he is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired.  Defendant argues that Plaintiff's disability discrimination claim "fails as a matter of law because he was not able to perform the essential functions of his job with or with a reasonable accommodation."  Doc. 19 at 14.  Plaintiff argues he was a qualified individual.  Doc. 21 at 12.

Where, as here, Plaintiff's status as a qualified individual is the determinative issue, courts conduct a two-step inquiry.  *Hawkins*, 778 F.3d at 887; *see Robert v. Bd. of Cnty. Comm'rs*, 691 F.3d 1211, 1216 (10th Cir. 2012).  First, the Court asks "whether the plaintiff can perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job

at issue." *Adair v. City of Muskogee*, 823 F.3d 1297, 1307 (10th Cir. 2016) (quoting *Hawkins*, 778 F.3d at 887). Second, "if we concluded that Plaintiff is not able to perform the essential functions of the job, we must determine whether any reasonable accommodation by the employer would enable him to perform those functions." *Id.* "To be clear, however, we will not obligate an employer to create a position out of wholecloth to accommodate the individual in question." *Hawkins*, 778 F.3d at 884 (citations omitted).

### 1. Whether Plaintiff Can Perform the Essential Functions

"Our first task is to determine, assuming the facts to be as [Plaintiff] has presented them, whether [Plaintiff] can perform the essential functions of the employment position." *Davidson*, 337 F.3d at 1190. "[E]ssential functions" of a position include "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n). This term "does not include the marginal functions of the position." *Id.* "The employee bears the burden of showing [his] ability, with or without reasonable accommodation, to perform the essential functions of her job." *Unrein v. PHC-Fort Morgan, Inc.*, 993 F.3d 873, 877 (10th Cir. 2021); *see Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1262 (10th Cir. 2009). However, the "employer [] bears the burden of demonstrating that a job function is essential because, after all, the employer is in the best position to do so." *Unrein*, 993 F.3d at 877; *see Hawkins*, 778 F.3d 877 at 889 ("Courts require an employer to come forward with evidence concerning whether a job requirement is an essential function") (collecting cases).

"[C]ourts must give consideration to the employer's judgment as to what functions of a job are essential, including those functions contained in a written job description." *Davidson*, 337 F.3d at 1191 (citing *White v. York Int'l Corp.*, 45 F.3d 357, 361 (10th Cir.1995; 29 C.F.R. § 1630.2(n)(1); and 42 U.S.C. § 12111(8)). The Tenth Circuit's "disability-discrimination caselaw

explicitly incorporates the EEOC's regulations and counsels in favor of deference to an employer's judgment concerning essential functions." *Adair*, 823 F.3d at 1307 (citing *Hawkins*, 778 F.3d at 884–85). Indeed, "[b]ecause it is the employer's role to describe the job and functions required to perform that job, we will not second guess the employer's judgment when its description is job-related, uniformly enforced, and consistent with business necessity." *Kilcrease v. Domenico*, 828 F.3d 1214 (10th Cir. 2016) (citing *Hawkins*, 778 F.3d at 888) (quotation marks omitted). A job function may be considered essential because "the reason the position exists is to perform that function,…the limited number of employee available among whom the performance of that job can be distributed; and/or…[t]he function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function." 29 C.F.R. § 1630.2(n)(2). Evidence of whether a particular function is essential includes, but is not limited to: (1) the employer's judgment as to which functions are essential; (2) written job descriptions; (3) the time spent performing the function; (4) the consequences if the individual cannot perform the function; (5) any collective-bargaining agreement; (6) the work experience of those in the position in the past; and (7) the current work experience of those in similar positions. 29 C.F.R. § 1630.2(n)(3).

Critically, "[d]etermining whether a particular function is essential is a factual inquiry." *Davidson*, 337 F.3d at 1191. And, in the necessary first step [of] identify[ing] the 'essential functions' of the position[,]… the employer's judgment is not conclusive evidence. *EEOC v. Picture People, Inc.*, 684 F.3d 981, 997 (10th Cir. 2012). "Indeed, despite our usual deference to an employer's adoption of qualifications based on its judgment and experience, we have firmly held that 'an employer may not turn every condition of employment which it elects to adopt into a job function, let alone an essential job function, merely by including it in a job description.'"

12

*Hawkins*, 778 F.3d at 877 (citing *Picture People, Inc.*, 684 F.3d at 997).  Additionally, "[t]he question of whether an employee can *perform* the essential functions of her job is a mixed question of law and fact."  *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1122 (10th Cir. 2004) (citation omitted) (emphasis added).

As a preliminary matter, the Court notes that neither party explicitly laid out their contentions on which functions were essential, so the Court has attempted to glean their respective positions from the briefing.  The Court is mindful that binding precedent clearly requires Defendant to demonstrate a function is essential and Plaintiff to demonstrate he has the ability to perform the function with or without reasonable accommodation.  *Unrein*, 993 F.3d at 877.

First, Defendant appears to contend that one essential function of Plaintiff's position was "repairing furniture to showroom quality and making sure customers were satisfied with it.  This included repairing crushed corners on dressers, chests, nightstands, headboards."  Def.'s SOF ¶ 8.  Plaintiff does not dispute this.  The Court concludes this was an essential function of Plaintiff's job because that was the main reason Plaintiff's position as a Shop Technician existed and the parties agree it was an essential function.

However, viewing the facts in a light most favorable to Plaintiff, the Court concludes that Plaintiff has alleged sufficient facts to establish a genuine issue of material fact of whether he was able to perform the essential function of repairing furniture to showroom quality and making sure customers were satisfied with it, including repairing crushed corners.  Notably, Plaintiff testified between August 2018 and his termination, he could still repair the same number of pieces as he had prior to the onset of his disability.  Gutierrez Depo. at 40:10-16.  Plaintiff has presented evidence that, prior to being terminated, he was not informed that his job was in jeopardy due to his performance or that the quality of his work had declined.  Gutierrez Depo. at 42:10-20, 43:16-

24.  Plaintiff has presented evidence that Defendant expressed satisfaction with his work product shortly before he was terminated.  *Id*. 57:23-58:3.  Because the Court finds a genuine dispute of material fact as to whether Plaintiff could perform this function, the Court need not analyze the second prong of the two-step "qualified individual" test for this function.  There is a genuine dispute of material fact as to whether Plaintiff could perform this essential function.  A reasonable jury could find for Plaintiff, so the question must go to the jury.

Second, the parties agree that one of the essential functions of Plaintiff's position was heavy lifting and that he could *not* perform this function without accommodation.  The Court finds heavy lifting was an essential function and Plaintiff was unable to perform this function.  But, the parties dispute whether Plaintiff could perform this essential function with accommodation, so the Court will analyze that question below under the second prong of the two-step inquiry.

Third, Defendant contends that an essential function of the position was "long hours of standing, bending, twisting, and constant physical movement."  Def.'s SOF ¶ 9.  Plaintiff agrees that this was an essential function of his position, Doc. 21 at 3, ¶ 4, so the Court finds this was an essential function.  Because Plaintiff asserts he needed a reasonable accommodation to perform this essential function and Defendant only asserts that Plaintiff was unable to bend specifically, as opposed to contesting Plaintiff's ability for lifting, twisting, and physically moving (Doc. 19 at 15), the Court will analyze the essential function of "long hours of bending" under the second prong the two-step inquiry below.

Fourth, the parties dispute whether repairing upholstery was an essential function.  Defendant argues it was an essential function, Def.'s SOF ¶ 25.  Plaintiff avers it was not because Plaintiff was not hired or responsible for repairing upholstery.  Doc. 21 at 4, ¶ 8.  Viewing the facts in the light most favorable to Plaintiff, the Court finds there is a genuine dispute of material fact

14

as to whether repairing upholstery was an essential function of Plaintiff's position.  There are several conflicting facts on this point.  The written job description lists repairing upholstery as "necessary" and a "requirement," suggesting it is essential under 29 C.F.R. § 1630.2(n)(3).  Though that suggests it was "job-related," Defendant has not brought forth evidence that it was also "uniformly enforced *and* consistent with business necessity."  *Kilcrease*, 828 F.3d 1214.

In addition, other evidence indicates it was not essential.  In a December 2018 email exchange between Stephanie Sweet, Defendant's Human Resources Manager, and Mr. Bolander, Ms. Sweet asked Mr. Bolander to "please describe in detail which essential job functions Robert [Gutierrez] is able and unable to do at this point."  Def.'s Ex. 8, Doc. 19-1 at 96.  Mr. Bolander responded describing his assessment that Plaintiff was unable to lift "pretty much anything," Plaintiff was "unable to write," and when Plaintiff used aerosol cans "he needs someone to change the lids for him as he is unable to grip pretty much anything."  *Id.*  Notably, Mr. Bolander did not note anything about repairing upholstery, which weighs against the contention that this was an essential function.  Also, Plaintiff testified that he did not do upholstery work for a "year or two" prior to February 2019, suggesting that the "time spent performing the function" was not great. *See* 29 C.F.R. § 1630.2(n)(3).  Recognizing that an "employer may not turn every condition of employment…into an essential job function, merely by including it in a job description," *Hawkins*, 778 F.3d at 877, and the other evidence before it, the Court finds that there is a genuine dispute of material fact regarding whether repairing upholstery was one of Plaintiff's essential functions.

Next, Defendant argues that using various tools, such as the burn-in knife, band saws, and miter saws, were essential functions, and that Plaintiff was unable to use these tools, particularly the burn-in knife, with or without accommodation.  Plaintiff does not dispute this was an essential function.  Doc. 21 at 11.  Plaintiff contends that he was able to perform this function without

15

accommodation. *Id.*; Gutierrez Depo. at 39:12-16; 55:9-14.[3]  Construing all reasonable inferences in favor of Plaintiff and because Plaintiff testified he was able to use these tools, the Court finds there is a genuine dispute of material fact as to whether Plaintiff had the ability to perform the essential function of using these tools.

Finally, both Defendant and Plaintiff's briefs discuss Plaintiff's ability write and change aerosol caps.[4]  Neither party's briefing clearly indicates whether they view these activities as essential functions, but because the parties dispute Plaintiff's ability to perform these activities, the Court infers that the parties dispute whether they are indeed essential functions. While Mr. Bolander's December 2018 email to Ms. Sweet indicated his view that were essential functions, the rest of the record suggests these are not essential functions. The written job description does not list either function.  Def.'s Ex. 4.  The record does not indicate how much time Plaintiff spent performing either function.  The record does not indicate what the consequences would be if Plaintiff could not perform either function.  The Court therefore finds that there is a genuine dispute of material fact as to whether holding a pencil and changing aerosol caps were essential functions.

In sum, the Court finds there is a genuine dispute of material fact regarding whether the following were essential functions: repairing upholstery, writing, and changing aerosol caps.  The Court finds there is a genuine dispute of material fact as to whether Plaintiff had the ability to perform the following essential functions: repairing furniture to showroom quality and making

---

[3] Plaintiff concedes that he told Ms. Sweet using the burn-in knife was "scary."  Gutierrez Depo. at 39:12-19.  The Court agrees with Plaintiff that whether Plaintiff was able to use the burn-in knife is a different question than whether using the tool was scary.

[4] The record is unclear as to whether Defendant is arguing that grasping a pencil is a separate function from writing. *Compare* Doc. 19 at 7, ¶ 36 *with* Doc. 19 at 15 *and* Doc. 19-1 at 95.  Given the lack of argument either way, the Court treats these activities as one for purposes of its analysis here.

sure customers were satisfied with it; and using various tools.  For these functions, the Court need not analyze the second prong of the two-step inquiry because a jury must resolve the disputed questions of fact.

However, the Court concludes Plaintiff was unable to perform the essential functions of heavy lifting and long hours bending.  The Court now considers the second step of its inquiry to determine whether Plaintiff was a qualified individual, that is, whether any reasonable accommodation by Defendant would enable Plaintiff to perform these two functions.

### 2.   Whether Reasonable Accommodations Would Enable Plaintiff to Perform Essential Functions

"Whether an accommodation is reasonable under the [NMHRA] is a mixed question of law and fact."  *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1122 (10th Cir. 2004) (citation omitted).   Courts use a burden-shifting framework to decide this issue when an employer moves for summary judgment.  *White*, 45 F.3d at 361; *see also Osborne*, 798 F.3d at 1267.  First, the plaintiff "need only show that an accommodation seems reasonable on its face, i.e. ordinarily or in the run of cases."  *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 402, 122 S.Ct. 1516, 1523.  "A proposed accommodation is not reasonable on its face if it would not enable the employee to perform the essential functions at issue."  *Osborne*, 798 F.3d at 1267; *see also Mason*, 357 F.3d at 1122 ("We have consistently held…that an employee's request to be relived from an essential function of h[is] position is not, as a matter of law, a reasonable or even plausible accommodation").

Second, if the employee suggests a facially reasonable accommodation, "the [b]urden of production then shifts to the employer to present evidence of its inability to accommodate."  *Mason*, 357 F.3d at 1122; *White*, 45 F.3d at 361.  The employer "must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances."

17

*Barnett*, 535 U.S. at 402.  Finally, if the employer meets its burden, the "employee has the burden of coming forward with evidence concerning her individual capabilities and suggestions for possible accommodations to rebut the employer's evidence." *Mason*, 357 F.3d at 1122.

Here, Plaintiff has shown the accommodation of receiving help lifting things is reasonable on its face.  This is so because this accommodation did not relieve Plaintiff of his obligation to perform the essential functions of heavy lifting and bending.  Viewing the facts in the light most favorable to Plaintiff, as the Court must, Plaintiff's request for help lifting items did not relieve him of this essential function.  Plaintiff testified that he told Mr. Bolander he needed "help lifting the heavy stuff" and in response, Mr. Bolander told Plaintiff "when you need help, just get one of the guys to help you."  Gutierrez Depo. at 33:3-11.  Plaintiff testified that he "was helping them lift it, but I just needed help with the very heavy stuff."  Gutierrez Depo. at 33:3-11.  The accommodation allowed Plaintiff to continue performing bending and heavy lifting.

Having satisfied his burden, Defendant must present evidence of its inability to accommodate.  The Court finds Defendant does not meet its burden here.  Mr. Bolander testified that Defendant would have continued to provide the lifting accommodation to Plaintiff had he not been fired, though Mr. Bolander "couldn't say for how long it would have gone [on]."  Bolander Depo. at 43:24-44:2.  Defendant does not explain how Mr. Bolander's uncertainty as to how long this accommodation could have "gone on" constitutes undue hardship.

Similarly, though Mr. Bolander testified that Defendant was "short-staffed" which made helping Plaintiff lift heavy items "a problem from time to time," *Id*. at 33:9-13, Defendant does not show any special circumstances that demonstrate undue hardship for it by providing this accommodation.  Mr. Bolander's conclusory statement does not show the Court how being short-staffed and providing Plaintiff this accommodation caused Defendant undue hardship.  *See*

*Osborne*, 798 F.3d at 1260 ("Merely noting that modifications would require [the employer] to contact its vendor does not show undue hardship").

Viewing the facts in the light most favorable to Plaintiff, there was a reasonable accommodation that would enable Plaintiff was able to perform the essential functions of heavy lifting and bending.[5]  As a result of the above analysis, there is a genuine dispute of material fact regarding whether Plaintiff is a qualified individual.  Viewing the facts in the light most favorable to Plaintiff as the non-movant, the Court finds Plaintiff has established the second prong of his prima facie case.  Having found that all three elements of the prima facie discrimination case have been satisfied, the Court determines that summary judgment is inappropriate on Plaintiff's termination discrimination claim.

### 2.   Failure to Accommodate Claim

Plaintiff has also brought a claim against Defendant alleging it failed to accommodate his disability.  In order to establish a prima face failure-to-accommodate claim, a plaintiff must show (1) he is disabled; (2) he is qualified; and (3) he requested a plausibly reasonable accommodation. *Sanchez v. Vilsack*, 695 F.3d 1174, 1177 (10th Cir. 2012);[6] *see Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017); *see also Exby-Stolley v. Bd. of Cty. Commissioners*, 979 F.3d 784, 792 (10th Cir. 2020), cert. denied sub nom. *Bd. of Cty. Commissioners of Weld Cty., Colorado v. Exby-Stolley*, 141 S. Ct. 2858, 210 L. Ed. 2d 962 (2021) (" these articulations of the prima facie case for a failure-to-accommodate claim exhaustively enumerate the essential elements of that claim").

---

[5] Defendant does not argue that even if the accommodation was reasonable, it would not enable Plaintiff to perform the essential functions of his position with the accommodation.

[6] The *Sanchez* court analyzed a claim for discrimination under the Rehabilitation Act, as opposed to the Americans with Disabilities Act.  However, the difference is immaterial because "[r]egardless of whether suit is filed under the Rehabilitation Act or under the [ADA] [r]the substantive standards for determining whether an individual is disabled are the same."  *See White*, 45 F.3d at 360 n.5.

"Because 'any failure to provide reasonable accommodations for a disability is necessarily because of disability,' it follows that a plaintiff need not prove the employer's motivation or intent to discriminate to prevail on a failure to accommodate claim." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1204 (10th Cir. 2018) (quoting *Punt*, 862 F.3d at 1048). This means a failure to accommodate claim is analyzed under a "modified *McDonnell Douglas* burden-shifting framework." *Id.* The framework requires that if the employee makes a showing on the three elements of his prima face case, then "the burden of production shifts to the employer to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer." *Smith v. Midland Brake, Inc., a Div. of Echlin, Inc.,* 180 F.3d 1154, 1179 (10th Cir. 1999). "If the employer does either of the above, summary judgment will be appropriate for the employer unless the employee then presents evidence establishing a genuine dispute regarding the affirmative defenses and/or rehabilitates any challenged elements of ... her prima face case sufficiently to establish at least a genuine dispute of material fact as to such challenged elements." *Id.*

Here, the Court determines that Plaintiff has established the first two elements of his prima face failure-to-accommodate claim, because the Court has already found in its analysis of the termination claim above that Plaintiff is disabled and is qualified. The last question is whether Plaintiff has shown he requested a "plausibly reasonable accommodation."

Plaintiff has shown the heavy lifting accommodation was a plausibly reasonable accommodation. The Court found above that Plaintiff has shown this accommodation to be

reasonable and that Defendant has not shown that providing this accommodation would be an undue hardship.[7]

The other accommodation the Court must analyze is that related to a possible leave of absence as suggested in Dr. Bryniarski's forms, the parameters and meaning of which the parties heavily dispute. Defendant claims that Dr. Bryniarski noted Plaintiff needed a leave of absence until June 2019 at which time Plaintiff would be reevaluated. Defendant contends this accommodation request was an "indefinite leave of absence," and requests for indefinite leave are not reasonable. Doc. 19 at 15-16. Plaintiff argues that the request for a leave of absence was not indefinite because Dr. Bryniarski noted the period of leave would be 10-20 weeks, or until June 2019.[8]

Viewing the evidence in the light most favorable to Plaintiff, the Court finds the request for leave was plausibly reasonable. Dr. Bryniarski's form indicated Plaintiff "required leave from work…as a result of his condition" until "June 2019." Doc. 19-2 at 10. This statement informed Defendant of the date Plaintiff would likely be able to return to work, which makes the request plausibly reasonable. *See Herrmann v. Salt Lake City Corp.*, 21 F.4th 666, 677 (10th Cir. 2021) (where plaintiff provided expected end date for leave request and proposed return date was tied to her recovery, request for leave was not indefinite and for summary judgment purposes was plausibly reasonable).

Defendant asks the Court to rely on *Cisneros v. Wilson*, 226 F.3d 1113, 1129-30 (10th Cir. 2000), as well as an unpublished Tenth Circuit case and two district court cases, for the assertion

---

[7] The Court also finds nothing in the record to indicate Defendant has "conclusively rebutted" that the accommodation was not plausibly reasonable.

[8] Dr. Bryniarki completed the form on February 7, 2019. Def.'s Ex. 11. Twenty weeks from that date would have ended in June 2019.

that a request for indefinite leave does not allow the employee to perform the essential job functions in the future and so is not reasonable. However, the *Herrmann* court clarified that its holding in *Cisneros* related to a plaintiff for whom the duration of their illness was "uncertain" and "unknown." *Herrmann*, 21 F.4th at 677. The Tenth Circuit concluded:

> [i]n chronic impairment cases, ongoing exchanges between employers and employees are likely to start with discussion of FMLA leave and morph into discussion of ADA accommodations. It is also likely that an estimate of when symptoms will subside and allow return to work is the best an employee or medical provider can offer, given that chronic conditions can last a lifetime.

*Id*. As this is the situation here with Plaintiff's chronic arthritis and because Plaintiff's request for leave included an end date, the accommodation was plausibly reasonable. Because Defendant's only argument regarding the leave request is that it was indefinite and because the Court has found that argument lacks merit, the Court finds Defendant has not met its burden of production under the second step of the modified *McDonnell Douglas* framework. As a result, summary judgment on Plaintiff's failure-to-accommodate claim is not warranted.

### C. Retaliation

The next question is whether summary judgment should be granted against Plaintiff on his retaliation claim. To establish a prima facie case of ADA retaliation, a plaintiff must prove that (1) he "engaged in a protected activity;" (2) he was "subjected to [an] adverse employment action subsequent to or contemporaneous with the protected activity;" and (3) there was "a causal connection between the protected activity and the adverse employment action." *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1186–87 (10th Cir. 2016) (citation omitted).

When a plaintiff attempts to prove his retaliation claim using circumstantial evidence, the *McDonnell Douglas* framework described applies. *See id*., 830 F.3d 1178.[9] Under this framework,

---

[9] Unlike the direct evidence available for Plaintiff's discrimination claim, there does not appear to be direct evidence in the record to support Plaintiff's retaliation claim.

as described above, once a plaintiff establishes a prima facie case of retaliation, "the employer has the burden of showing it had a legitimate, nondiscriminatory reason for the adverse action. If the employer can do so, the burden shifts back to the plaintiff to prove pretext, which requires a showing that the proffered nondiscriminatory reason is unworthy of belief." *EEOC v. Picture People, Inc.*, 684 F.3d 981, 988 (10th Cir. 2012) (citations and quotation marks omitted).

Plaintiff was subjected to an adverse employment action, as it is undisputed that Defendant terminated his employment. *See Foster*, 830 F.3d at 1178 (finding that termination is unquestionably an adverse employment action). Defendant does not appear to dispute that Plaintiff engaged in a protected activity by requesting accommodations.[10] *See* Doc. 19 at 19-20. As a result, Plaintiff satisfies the first two elements of his prima facie retaliation claim.

Regarding the third element, Defendant disputes that there was a "causal connection between Gutierrez's claimed request for accommodation and his termination" because Defendant granted Plaintiff's request for help with heavy lifting and granted his request for FMLA leave to undergo neck surgery. Doc. 19 at 20. Defendant asserts Plaintiff was "terminated because, as his own doctor noted, he was unable to perform the essential functions of his job even with an accommodation." *Id.* Finally, Defendant avers that even if Plaintiff can establish a prima facie retaliation case, "his claim still fails because…Ashely had a legitimate, non-retaliatory reason for terminating his employment" so his claim fails as a matter of law. *Id.* Plaintiff asserts there is a causal connection because after Plaintiff had neck surgery, Defendant did not want to accommodate him anymore. Doc. 21 at 20. As evidence, Plaintiff points to the fact that Defendant

---

[10] "[A] request for accommodation can constitute protected activity supporting a retaliation claim." *Foster*, 830 F.3d at 1188.

claimed Dr. Bryniarski suggested "indefinite leave; however, the leave suggested was 10-20 weeks." *Id.*

When assessing whether there is a sufficient causal connection for a prima facie retaliation claim, a key factor is temporal proximity. "[W]here a considerable length of time has elapsed between a protected activity and an adverse employment action, a plaintiff wishing to survive summary judgment must present 'additional evidence' tying the adverse employment actions to [the plaintiff's protected activity]." *Foster*, 830 F.3d at 1191 (quoting and citing *Ward v. Jewell*, 772 F.3d 1199 (10th Cir. 2014) (alteration in original). But, a "plaintiff may rely solely on temporal proximity to show causation during the prima facie stage of the *McDonnell Douglas* framework where his protected activity is closely followed by an adverse employment action." *Foster*, 830 F.3d at 1191 (citing *Anderson,* 181 F.3d at 1179) ("[W]e have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation.").

In this case, there is sufficient temporal proximity for Plaintiff to satisfy the causal connection prong of his prima face claim because Dr. Bryniarski completed the Reasonable Accommodation Request forms on January 24, 2019 and February 7, 2019. Plaintiff was terminated on February 21, 2019. Less than a month elapsed from the time between when both Reasonable Accommodation Forms were completed and the time Plaintiff was terminated. The temporally proximity is sufficient to show causation.

Because Plaintiff has established a prima facie case of retaliation, the burden of production shifts to Defendant to show it had a legitimate, nondiscriminatory reason for the termination under

24

the *McDonnel Douglas* framework.[11]  Defendant argues its legitimate, nondiscriminatory reason

for terminating Plaintiff was that it is "undisputed that Gutierrez was performing poorly, was

unable to perform essential functions of his job, and was taking too long to complete projects.

Additionally the quality of Gutierrez's work was poor, resulting in furniture he worked on being

sent to the clearance center."  Doc. 19 at 18.[12]

     Defendant is incorrect that these facts are undisputed.  The Court has already found there

are genuine disputes of fact as to the quality of Plaintiff's work and his ability to perform the

essential functions of his job.  Regarding the assertion that he was taking "too long to complete

projects," the Court finds there is also a genuine dispute of material fact.  Though Plaintiff has

admitted some of his repairs took longer than they had previously, he also testified that he was

repairing about same number of pieces each day between August 2018 and his termination.

Gutierrez Depo. at 40:10-19.  Whether Plaintiff was taking "too long" to complete his projects is

a fact question that should go to the jury.  In sum, Defendant has not met its burden of production

to show it had a legitimate, nondiscriminatory reason for terminating Plaintiff so the Court need

not reach the pretext prong of the burden-shifting framework.  The Court denies Defendant's

request for summary judgment on Plaintiff's retaliation claim.

---

[11] The parties also discuss whether Defendant engaged in the "interactive process" to determine reasonable accommodations for Plaintiff.  *See* 29 C.F.R. § 1630.2(o)(3).  Having found Plaintiff established his prima facie failure-to-accommodate claim, the Court does not need to reach this issue.  *See Valdez v. McGill*, 462 F.App'x 814, 819 (10th Cir. 2012) ("the interactive process is only a means to an end. To recover under the ADA, a plaintiff must show a reasonable accommodation was possible.") (citation and internal quotation marks omitted).

[12] In Defendant's Motion, when discussing its legitimate reason for terminating Plaintiff in the retaliation section, it notes that it outlined this reason "above."  Doc. 19 at 20.  The Court takes this to mean Defendant is referring to its argument two pages earlier, where it described its legitimate non-discriminatory reason for terminating Plaintiff in a different section. Doc. 19 at 18.

### D.  Damages

Finally, Defendant requests summary judgment on Plaintiff's claim for damages. Defendant asserts Plaintiff cannot recover damages "because he has not attempted to mitigate his damages."  Doc. 19 at 20.  Defendant argues Plaintiff has not attempted to find full time work and applied for only one furniture repair job, which he did not get, after which time he stopped looking for furniture repair jobs.  *Id.* at 21.  Plaintiff argues he applied for numerous employment positions after being terminated, continues to actively seek work, and plans to accept a position offered to him.  Gutierrez Depo. at 64:9-11; 65:22-66:9; 67:7-9; 68:2-4.

In order to mitigate his damages, a plaintiff "need only make a reasonable and good faith effort, and is not held to the highest standards of diligence."  *Minshall v. McGraw Hill Broad. Co.*, 323 F.3d 1273, 1287 (10th Cir. 2003) (quoting *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1158 (10th Cir. 1990).  The "burden is on the employer to establish that the claimant did not exercise reasonable diligence." *Id.*

In this case, Plaintiff testified that after Defendant terminated his employment he applied for jobs at "Walmart, Dillard's, Ace Auto Supply, American Furniture, La Cumbre Brewing, Target…Dollar Tree, Family Dollar…Smith's."  Gutierrez Depo. at 65:22-66:9.  Defendant has not established Plaintiff did not exercise reasonable diligence in mitigating his damages.  Given the test set forth by the Tenth Circuit on mitigation of damages, the Court finds summary judgment is inappropriate on Plaintiff's claim for damages.

In conclusion, the Court finds that Plaintiff's age discrimination claim is the only claim on which summary judgment is warranted.  As to all other claims, the Court declines to grant Defendant's request for summary judgment.

**IT IS THEREFORE ORDERED** that DSG New Mexico, LLC d/b/a Ashley Home Furniture's Motion for Summary Judgment (Doc. 18) is **GRANTED** as to Plaintiff's age discrimination claim only and **DENIED** in all other respects.

**IT IS SO ORDERED**.


_____
DAVID H. URIAS
UNITED STATES DISTRICT JUDGE